The next case today is Emery G. Snell v. Thomas Neville et al. Appeal number 192018. Attorney Yost, please proceed with your argument. Thank you. May it please the court, my name is Andrew Yost, and with my co-counsel Lucas Silva and Summer Wiss, we represent the plaintiff appellate Emery G. Snell Jr. Before beginning, I would like to reserve one minute for rebuttal. You may. This is an appeal from the district court's decision granting summary judgment for the Department of Correction or DOC defendants and Dr. Patricia Ruiz. The decision below should be reversed for at least two reasons. First, the district court incorrectly held that Mr. Snell's claims seeking a reasonable accommodation for his disabilities require showing of discriminatory animus. Second, the district court resolved three critical disputes of fact against the non-movement Mr. Snell. I'll address each of these errors in turn. The standard of review is de novo. Given the limited time, I will keep my summary of the relevant background brief. Mr. Snell is a 64-year-old man serving a life sentence in the Massachusetts prison system. Among other medical conditions, Mr. Snell suffers from degenerative joint disease or osteoarthritis of his lower back and knees. Because of these conditions, Mr. Snell has used a cane to walk since at least 2013, and he uses a back brace and bilateral knee braces. In the proceedings below, Mr. Snell brought claims seeking a reasonable accommodation that would allow him to access legal research materials in prison without being required to climb stairs. Mr. Yost, could you clarify what he's asking for under his ADA? I understand he's asking for a reasonable accommodation. Are you pressing an entitlement to damages under the ADA? Your Honor, the claim doesn't include a claim for damages. The claims for damages were never pressed or challenged by the defendants at summary judgment. They were not addressed by the district court in its decision, and they are not pressed and briefed on appeal. To the extent that Your Honor's believe that the issues of damages are dispositive to this appeal, we would respectfully submit that it requires additional briefing. But that's the problem. There's no argument on appeal that he should be entitled to any damages, and he's now in a new prison, so isn't the accommodation claim itself moot? No, Your Honor. I believe that that is one of the critical disputes of fact that the district court failed to resolve in Mr. Snell's favor. With regarding the mootness, Mr. Snell had argued that despite his transfer to MCI Shirley, this case is one that is capable of repetition yet evading review. In this decision, the district court reasoned that this case is not capable of repetition yet evading review because the record shows that medical restrictions are reviewed before they expire. Mr. Snell's transfer to MCI Shirley was predicated on a no-stairs medical restriction that was set for one year and has now since expired and been expired since November 2019. The record, however, showed that medical restrictions typically are not reviewed before they expire. Dr. Ruiz, who was the medical director of MCI Concord, Mr. Snell's former prison facility, testified that there is not a very good system in place to ensure that medical restrictions are reviewed before they expire. Isn't there a procedure in place where Mr. Snell could request that he be reviewed before his accommodation expires? I believe that there is a way for Mr. Snell to seek medical appointments via sick slips. Yes. But if Mr. Snell did not have a medical condition that required medical attention at that time, I do not know whether or not he would be able to actually request a medical assessment simply for the purpose of renewing medical restrictions. And more to the point, Mr. Snell shouldn't you know that? Your argument is that there's not, contrary to what the commonwealth says, I mean your argument is that they don't have a routine procedure in place. I mean once again that's disputed, but it seems to me that if there is a procedure in place that would allow your client access to medical evaluation before his accommodation expires, I'm not sure why that is isn't satisfactory. Your Honor, if I may, in the testimony of defendant Lins, who is the deputy that a medical restriction has expired is often after the fact. For example, an inmate believes that he is medically restricted to a bottom bunk. He is restricted to that bottom bunk for a period of time, and then because of the circumstances they attempt to transfer him to a top bunk. He then complains, an investigation ensues, and it is then discovered that the medical restriction has expired. But doesn't the record show that he sees the doctor almost every month? He regularly sees a doctor. So on any one of those visits he could just ask the doctor, could you comment on my knees and ability to walk upstairs? That's why he's seeing the doctor, isn't it? Yes. I'm puzzled. He's in a situation now in a prison where he doesn't need any, he doesn't have to walk upstairs, so he's got no current claim. What's the scenario where all of a sudden he could suddenly need a claim and yet not have time to do anything about it? If he was transferred out of MCI Shirley to another prison facility that would require him to climb stairs to access legal research materials. Well he could just ask his doctor for a restriction at that point, couldn't he? Yes, I believe that there are also complications in that regard in the sense that the evidence in the record shows that an inmate cannot grieve or challenge something that is not essentially right. So essentially now at MCI Concord my understanding is that everything is on the first floor. So a medical restriction saying that Mr. Snell cannot climb stairs is not even something that would even have relevance at MCI Concord. No, but it would have relevance if he finds out he's going to be transferred. Yes, but he only finds out that he is going to be transferred when being transferred. For example, Mr. Snell was transferred from MCI Concord to MCI Shirley the very day that he was issued a no stairs medical restriction and there was a period of time where he had no idea what was happening to him at that moment. But if he's transferred back to Concord, I'm still trying to understand what prevents him from asking for a medical evaluation. I'm trying to deal with your argument about capable of repetition and evading review. Mr. Snell would be able to request a medical assessment and in that medical assessment he could certainly bring up the issue of his ability to climb stairs. But the core of the claim is that Mr. Snell was given a reasonable accommodation for over two years and then it was suddenly terminated without there being any affirmative showing that his medical condition had actually changed. During that period, wasn't he working at a job up on the second floor after he first got the restriction? So Mr. Snell worked as a clerk in the second floor law library for approximately a year between 2011 and 2012. In 2013, specifically July 2013, it is his testimony that he was given a reasonable accommodation that would now allow him to do Lexis research on a first floor Lexis terminal so that he would no longer be required to climb up and down those stairs. He also explained at his deposition that during that one year period he was experiencing significant swelling. He was taking inflammatory drugs and he wouldn't have been able to continue his position as a clerk in the law library. Does all this go to damages? No, your honor. Again, I would respectfully submit that if this court believes that the by the parties. I mean, you do understand that we let you pick what issues you want us to focus on? Yes, your honor. And the issue of damages was never raised at summary judgment. So he's only seeking injunctive relief? The damages claims are still live. They were not part of the district court's decision nor raised at summary judgment. I think the way it works is the suggestion has been raised that the ADA claim is moot. And no argument has been made that it's not moot because he has a claim for damages. At least I didn't see one. No, your honor. That is not what we pressed at summary judgment nor on appeal. Our position is that the ADA claim is not moot because this is a case that is capable of petitioning and evading review. Understood. And that is my time. And unless your honors have any further questions, we would respectfully submit that the decision below be reversed and set forth in our opening brief. Thank you. At this time, I would ask attorney Arrow Bartavian to please present our argument. Good morning. May it please be known. Good morning. Mary Arrow Bartavian for the Department of Correction or DOC defendants. The Department of Correction has a system with respect to accommodations. And the DOC utilizes that system to ensure that medical treatment and accommodation determinations are grounded in professional clinical judgment. And the current judgment of medical professionals as to Mr. Snell's need for medical care and reasonable accommodations. Now, Mr. Snell's attorney just said that Mr. Snell was given an accommodation for two years and it was taken away. That is not true. What happened was Mr. Snell took it upon himself without an accommodation to begin using the first floor Lexus terminal. At his deposition, Mr. Tetreault explained that he assumed that Mr. Snell was allowed to use that. And in fact, he said that Mr. Snell kept using the word accommodation. However, when it was discovered by the deputy superintendents that he was using that, they checked and he did not have a reasonable accommodation that stated that he could not do stairs. And that was uncontested in the district court. He never had a reasonable accommodation that said no stairs until 2018 when Dr. Churchville issued it. So Jen, just technically, when someone is granted an accommodation, there's some type of notation placed in the inmate's record that they have an accommodation? Yes, it's placed in the inmate management system which is referred to as IMS and the officers have access to that. And if an inmate believes that they need an accommodation, is there a procedure in place to request a medical evaluation? Yes, there are two different ways what an inmate needs a medical accommodation. He can either go to his correctional program officer and fill something out which will go to the ADA coordinator who will then check with medical to see if there's a need for the accommodation. Or the inmate could put in a six slip and say, I am having trouble going up and down the stairs, I need an accommodation. And he can get an appointment that way as well. But it is up to the doctor whether or not there is a medical accommodation that's necessary and it's up to the department to decide how to implement it. Is somebody going to discuss the retaliation claim at all? The retaliation claim was properly dismissed by the district court because Mr. Snell presented no evidence that stopping his use of the first floor Lexus terminal was in any way retaliation and that it would not have occurred but for retaliation. It was clear that that terminal was for people who could not go upstairs to the second library. And in fact, even Mr. Tetreault said that he assumed Mr. Snell was able to use it and that if no one was using it, he really didn't care. However, he was told that there had to be a sign and that no one who does not have a reasonable accommodation that says no stairs is allowed to use that terminal because that's what it's for. Once Mr. Snell received a reasonable accommodation in 2018 from Dr. Churchville that said he could not do stairs and it also said that he required a handicapped accessible facility. The testimony was clear in the depositions that MCI Concord is not considered to be a handicapped accessible facility. The only two are MCI Shirley and Old Colony. And Old Colony mostly houses people who have mental health needs. Well, Mr. Snell used the first floor terminal for two years before he was terminated. Is that correct? That is correct. And so the facility was certainly aware that he was treating his permission as an accommodation. No, the facility was not aware. Mr. Tetreault was there with the librarian. And the librarian is part of your staff, I assume. Correct. Although Mr. Tetreault was not a medical doctor, Mr. Tetreault testified at his deposition that because Mr. Snell kept referring to it as an accommodation, he assumed he had an accommodation and he did not check. And that was something that Mr. Tetreault should not have done. But the testimony was undisputed that he did not have, Mr. Snell did not have a medical order in 2015 that said he could not do stairs. And in fact, until 2012, he had worked in the second floor library. Dr. Ruiz was very clear in her deposition testimony that she not only felt that Mr. Snell was capable of going up and down stairs, but that it would be beneficial so that his joints didn't stiffen. When you add the temporal situation to the fact that he had been using the facility for two years, does that present any kind of a problem? No, I don't believe it does. I mean, obviously in an agency that has a lot of employees, because one employee, again, who's not a medical doctor, mistakenly allows someone to do something they shouldn't be doing. That's not an argument for it to continue. He wasn't supposed to be doing it. When it was discovered, they stopped. It's sort of like if you parked in a handicapped spot, because you assume you're handicapped, and you say, well, but I don't have a placard, and you've been doing it for a year, and no one catches you. And then when they do, you can't say, well, I've been doing this for a year. You can't tell me now I can't park here. The issue is, in that case, they wouldn't have the placard. And the issue here is he didn't have the medical order that said no stairs. Just one point of clarification as far as what the record shows. At the point that Dr. Ruse, I'm not sure if I'm pronouncing the name correctly, made the medical notation that he did not need a first floor accommodation. What was the last time before that notation had she seen him? I believe her testimony was that she saw him at least every six months. Chronic care patients are seen on a regular scheduled basis, and that he had been her patient at that time for seven years, and she had seen him on approximately 15 occasions. So you're saying it would have been six months prior to the entry? Unless he had submitted a sick slip because there was, you know, an illness or an issue that he wanted to discuss with the doctor. Inmates are always able to do that, and chronic care is scheduled on a regular basis so that they can be monitored. I don't have any other questions. If I could just, with respect to the mootness, it is the department's position that Mr. Snell's claim is moot because he is now at MCI Shirley when it was determined that he needed a handicapped facility. To suggest that he might in the future be transferred to a facility where he may have to go up and down stairs and that he may not have an accommodation is really too speculative for this court to have to deal with. And for anything else, including the defendant's qualified immunity argument, again because they reasonably relied, and in fact had to rely, on the opinion of the independent physician that he was able to go up and down stairs, we would ask that the judgment in favor of the defendants from the district court be affirmed. Thank you. Thank you. Would attorney Puddister please unmute and present oral argument? Good morning, your honors. Good morning. This is attorney George Puddister for appellee defendant Patricia Ruiz. Dr. Ruiz served as Mr. Snell's primary care clinician from July 2010 to December 2017. During this period of time, she provided Snell with an immense amount of care that no one, including Snell's own expert, alleges was at any time inadequate. Instead, Snell and his expert simply alleged that in addition to all the other care he received, he should have also been provided with a no stairs restriction. Since Snell did not receive such a restriction, he contends that Dr. Ruiz committed deliberate indifference and retaliated against him under the ADA. I'm here today to ask the court to affirm the district court's awarding of summary judgment to Dr. Ruiz, and we'll focus on three main points which I will jump right into. First, Snell readily admits that he failed to exhaust his administrative remedies under the PLRA. During his deposition, Snell stated that not only did he never file the required grievance with the medical provider, he also never even asked Dr. Ruiz or any other medical provider for such a restriction. Because Snell never even attempted to exhaust his administrative remedies, Dr. Ruiz was never made aware of Snell's medical complaints and was denied the opportunity to try and resolve the present dispute before being sued. This is the exact scenario the legislator sought to prevent when it passed the PLRA, and Snell's present claims should be barred as a result. Turning to his deliberate indifference claim, his claim fails under both the objective and subjective prongs. Although the district court did not issue a decision pursuant to the objective prong, it did note that Snell's own expert failed to make any conclusions as to the quality of care that Snell received. In his brief, Snell inaccurately argues that the quality of care he received is not pertinent to the objective prong analysis, and that there is no relevance to the fact that his own expert failed to find that Snell received inadequate care. However, contrary to Snell's assertion, in order to survive the objective prong analysis, it is not enough for plaintiffs to simply demonstrate he has a serious medical need. He must also demonstrate that he received inadequate medical care for that need. Here, the undisputed facts reflect that at all times, Snell received adequate medical care, just not the specific care of his choosing, and as a result, his claim failed under the objective prong. His claim was still properly dismissed pursuant to the subjective prong, where there is not a shred of evidence that supports any inference that Dr. Ruiz ever acted with deliberate indifference. During the seven years Dr. Ruiz served as Snell's primary care physician, she evaluated him on numerous occasions and provided him with an immense amount of treatment and medical orders, which included x-rays and outside consultations, issuing orders for an ear cast, knee sleeves, anti-embolism stockings, and a back brace, providing him with a cane and pain medications, and recommending the issuance of a bottom bunk pass, light work status, and waist chains. Based on all of this care, Snell simply cannot prove that Dr. Ruiz ever failed to take obvious steps to address Snell's medical needs, nor can he prove that she acted with a culpable state of mind and intended to cause him harm. While Snell's expert contends that he should have been provided with a no-stares restriction, such an opinion is entirely irrelevant to whether or not Dr. Ruiz acted with deliberate indifference. Case law is very clear that courts will not second-guess a doctor's decision when the dispute concerns not the absence of help, but the choice of certain treatment. As the court noted in Koslick, there is no... Was there a question? Might I ask a question, if you hold on a second? Yes. Was Dr. Ruiz... Dr. is it Ruzy or Ruzy Ruiz? I say Dr. Ruiz, but Dr. Ruiz I think is actually correct. Was she sued only in her official capacity? I believe she was sued in her official and personal, but I would have to double-check that. And is there a damage claim against her? I believe plaintiffs did assert one. Okay, so that's the issue that you're directing your attention to? Yeah, I mean my attention here is that there was simply no... Any claims against Dr. Ruiz are barred by the PLRA, and to the extent they're not barred, there's no... The undisputed facts show that at no time did Dr. Ruiz act in any manner that was... Would support a claim for deliberate indifference, and she certainly did not retaliate against the plaintiff. The argument under the retaliation claim is that when plaintiff Mr. Snell filed a complaint with the DOC, the DOC contacted Mr. Ruiz and said, hey, does he have any medical need for a no-stairs restriction? At that point in time, Dr. Ruiz had been providing him care for six years. It issued numerous restrictions, but none of them included a no-stairs restriction. So when asked the question, she said, no, he can use stairs. That wasn't a new medical opinion. She wasn't retaliating against him. That was a medical opinion that she had held for the prior six years, and thus there's no grounds to support his claim that she retaliated against him by restating an opinion that she had already held for the prior six years. So, in regards to the mootness argument, I would point out that in addition to all the arguments raised... That's time. If I could just finish that one thought. Yes, you may. In addition to all the arguments about mootness, it should be noted that Dr. Ruiz ceased working at the prison in December 2017. And in fact, her prior employer is actually no longer even the medical provider. As of July 1st, 2018, there's a whole new medical provider in place that's contracted with the DOC. All right, thank you. Thank you. Thank you. If Attorney Yost could please present his one minute of rebuttal. Thank you. With regard to the DOC's argument, the first point I want to emphasize is that whether or not a no-stairs medical restriction was actually required for Mr. Snell to use the Alexis Terminal and typewriter is a matter of sub-genuine dispute. And the summary judgment record shows that. The fact that Mr. Snell was using these resources for over two years with the permission of the law librarian shows, quite simply, the common sense recognition that Mr. Snell, an individual with a cane, who is large, qualified as obese, and with breathing problems, and who walks with a limp, can't be expected to climb up and down two flights of stairs on a daily basis, especially when he's carrying stacks of legal files as he does to do legal work. I'd also like to emphasize that the medical restriction that precipitated Mr. Snell's transfer does not specify a transfer to a facility. It simply states no stairs. The decision to transfer is entirely within the purview of the DOC defendants. The medical restriction simply says that Mr. Snell cannot be required to climb stairs. Regarding Dr. Ruiz's arguments, again, I want to... That's time. Sorry, Your Honors, if I may finish that thought, I will. Maybe less than 30 seconds. 30 seconds. Thank you. Dr. Ruiz characterizes this as a case about the adequacy of Mr. Snell's care, but it is not. It is about the arbitrary termination of a reasonable accommodation, which the record then shows Dr. Ruiz incorrectly, assisted with by entering a progress note without examining Mr. Snell, ignoring the fact that he had numerous other medical restrictions beyond a no stairs restriction, showing that he cannot climb stairs. These include a cane, a bottom tier restriction, and clearly diagnosed degenerative orthopedic conditions. Thank you, Your Honors. Thank you, Counsel. May I call the next case? Yes, Judge, that concludes the arguments in this case.